OPINION of the Court, by
Judge Logak.
Calk, the appellant, asserts the superior right to certain lands deriicd under the following claim :
“January 18th, 1780 — William Calk, by Enoch: Smith, this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, on account of raising a crop of corn in the country in the year 1775, 1} ing on Small Mountain creek, waters of Licking creek, to include his improvement.”
On the 9th of February in the same year, entered with ¡the surveyor his .settlement right, conformably to the location in his certificate. And on the 6th of December 1782, entered his pre-emption, « adjoining his settlement oír the lower side, beginning at his N. E. corner, and extending down the creek ; thence angling to the west, including the creek with the quantity.” •
These entries vyeyc before this court in the case of Black vs. botts, (1 Bibb 95) and in that case sustained. So in the presenbease the evidence is entirely satisfactory with jssg&rd to the notoriety of the appellant’s improvement, as relates to his cabin and corn field. In the suit referred to, it does riot appear that there was any contest with respect to what constituted the improvement. But in the case before us, different kinds of improvement are represented, which from their situation would, if considered as one entire improvement constituting the locative call of the appellant, vary the position of his claim. y'
In the case of Smith vs. Harrow, &c. (1 Bibb 101) it was held that a call for an improvement which consisted of á cabin and a corn field,, ¿situated about 130 or .140 *579 poles apart, should embrace both as constituting the object of location. And upon this principle we apprehend the court below have determined the present cr.se.
We are aware of much difficulty in laying down any general rule in such, cases. A man’s house and corn field, each bear such high and convincing evidence, of his intention in the description of the land with reference to his improvement only, that in the case of Smith vs. Harrow no well founded doubt could exist. The nature of an improvement, and its order in time, may certainly show to a reasonable intendment the meaning of the. locator as to the place intended, from the single call for his improvement.
But had there been other improvements of an inferior order and less attracting in their character, such for example as a tree marked here and there with the, initials of a name, or a few bushes cut down at different places, it might be well doubted whether from the striking comparative difference, they ought to have been regarded, unless expressly called for.
it is true that without regard to their relative quality and size, those of a minor description would not only literally, but according to the supposed understanding of the country, apply to this call in the entry. But when an improvement constitutes the, only locative call of an entry, and in support of this call a cabin, or acom field, or some similar improvement, clearly evincing an intention of residence, and a fixed located mind to a de-limite spot, is shown, the attention is aptly drawn from those of the minor, and fixed upon those of the' greater importance. Improvements no doubt were frequently made from motives of curiosity, or of an unsettled speculating range of imagination, by marking, and cutting-letters or a few bushes wherever opportunities presented through the country, without any premeditated delay or an evident preference in favor of either. Between such, and those carrying upon their face evidence of a. more fixed intention of actual residence, we cannot fail to be impressed with the propriety of reducing the call for his improvement to a more certain and definite meaning, by applying it to those more distinguishing objects of his labor, which all would most likely concur had engrossed his attention when giving a (ie,snip; ion of the-land of his choice. A contrary construction might certainly betray the plain meaning of a locator to a species *580 of criticism destructive in its tendency to the just rights of the first and most meritorious description of claims.
It is a settled principle, that in general the several objects called for in an entry must be identified and prov-eed to have been attainable, either from the description given or their own genera! notoriety, upon using reasonable diligence.
From this principle, although one shall have built a bouse and lived in it since the earliest settlements of the country, having in his location railed for his improvement only, when in truth be had also marked the initials of his name and cut perhaps a few saplings at different places on the land, obscure in themselves, unknown to but a few, which however being susceptible of proof, and now raised from their obscurity under this reviving doctrine, to the destruction of the claim itself. Had Such improvements been expressly called for by the locator, without particularly describing their relative positions. for the want of notoriety or a given clew in the entry whereby to ascertain and to know them, the call would have proved fatal to the whole claim, unless their conspicuous situation had rendered them visible to the most ordinary search. When then their obscurity may have passed them unnoticed by the claimant, whilst his house, his Held and his enclosure sisal! have solely interested his mind, and in his location calling simply for “ his improvement” intended such only, if this expression.shall be construed as extending also to every description of improvement, then by construction extended beyond the necessary import of his call, would his claim be rendered totally invalid.
If to change the position of his claim more favorably to his wish, the locator should introduce one of those obscure improvements, which could not have- been ascertained, if even it had been called for, and which must therefore operate unjustly to the injury of his adversary, if permitted to have any effect when not particularly called for, surely the attempt ought not to prevail ⅛ effecting a change of its position.' Why, then, should it be permitted against him ?
It is in proof that the appellant, in company with two others, in the year 1775, deadened a few saplings within about 4 poles S. 20 W. from a spring, and marked two trees S. 45 E. 10 poles from the said spring; and in. 1779 built a cabin, cleared, fenced and planted a piece *581 of ground about 22 poles" nearly S. W. from' the same' spring. 7 ⅜
it does not appear that the deadened or marked trees'1 were ever generally known 'as his improvement, porr was it inferable, that they were, except as connected with" the cabin and field. The letters oil the trees were not - even the initials of his name. And it appears that ano*. ther improvement in the neighborhood thereof, consisting of a cabin1 albo, was claimed by a different person ;> so that the existence'of improvements in that vicinity, although they .should have been seen by subsequent locators, might, have been erroneously taken as the im*. pr en nts of the appellant. But his cabin and field were generally and well known, and the application "of his location to theratfeft no doubt'with regard to the po-' sition of his claim.
As then the locator calls for his improvement in 1780, at which time this cabin and field being well known as his, and the former marking, See. not sufficiently known* to have sustained an entry ; for it is to be observed that the general knowledge of his improvement arose from the cabin and field ; we think his cabin and fiehloiight to he taken as the locative call of Ms entry, and that his settlement ought to have been surveyed in a square to: the cardinal points, including the improvement in the centre. ⅜⅛ -
With respect to the pré-emption, as was determined in the case of Black vs. Botts, the call for the lower side, taken in conjunction with the calls for the northeast Corner, and down the creek, angling Jo the webty leaves* no doubt as to the side intended.
But as to the manner of surveying the pre-emption, we cannot from the case as now represented accord with that opinion. Although we feel what we profess the strongest disposition to adhere most scrupulously to the precedents set by former adjudications, as it is certainly our duty to do, yet we are bound against the application of opinions formed on one state of facts, between different parties, to the rights of others presenting thé case in a different attitude; but especially if convinced that the decision is not in accordahbe with former precedents afldthé substantial import" ofithe-entry.
We concur in the opinion that this entry should be surveyed by continuing the northern boundary of the Settlement eastj across théferéeki But ought'it to be *582 extended farther ?, Do the calls necessarily require it? And will it not operate as an unavoidable departure from the call, evidently intended by the locator as the most substantial one, leading* to the body of the land in its designation to the west ?
By the express calls of the entry, this claim is to lie below'the settlement, extend west, but to include the creek. Tiie creek is situated about 50 poles to the east of the northeast corner of the settlement, jind runs from thence for about a mile nearly north.
In the case of Black vs. Botts the court, from a regard to the rectangular figure, believing that no call in the entry required a departure therefrom, directed the lower boundary of the settlement tobe extended east across the creek, so far that a direct line north from its termination would just include the creek, thence west, placing the claim in a square.
According to this construction, from the course of the creek as represented in the report of that case, no striking injustice seems to be done to the fair meaning of the locator : for the body of the land which he appears to have sought is thereby placed where he expressly called for it, westwardly from the northeast corner of the settlement, the point of beginning in his entry, and on the west of the creek, the most eastern object called for.
But the creek, as delineated in the plat before us, af-terrunning some distance nearly north, turns almost to the east, and continues in that direction for some distance : so that a continuation of the lower boundary of the settlement so far to the east as that a line at right angles therefrom will include the creek, has the effect of drawing over a great part of the pre-emption to the east side of the creek.
This is an effect produced by construction against the positive call and the evident meaning of the locator. And it has never been held that the intention of a claimant as substantially expressed in his entry, shall be sacrificed to the rules of construction and regular figures.
The creek had only to have run a little farther to the east, to have disjointed the pre-emption from the.settlement, and placed it on the east, instead of the west of any object referred to. And all this by construction, opposed to the express calls of the entry and the obvious meaning of the locator, merely to preserve a taste for pretty figures. This cannot be right; it does not con? *583 sub ami maintain what from the entry we are bound to believe was the intention of the Iorator.
Had the northwest corner of the settlement been situated on the eastern margin of the creek, no doubt could have existed with regard to the manner of running out the pre-emption. The whole current of decisions unite in declaring that the claim in that event should run with the meanders of the creek. — See Hughes’s Rep. 19, 20, 102, 104 — Hard. 432 — 1 liibb 55, 67, 123 — 2 Bibb 360, 369.
The case of Webb vs. Bedford, (2 Bibb 360) is a strong case. The entry in that case called to begin at the mouth of a certain run on the east side of Stoner’s fork, and to- run up the creek ; thence back including both sides of the run.
It was determined that this entry should be surveyed binding on the creek, and back as nearly in a square as the creek- woidd permit. But if the run should not be thereby included, then the claim should be extended down so far only as to include the same, by running with its lower margin, still preserving the rectangular figure as near as the creek and branch and the call to run up the creek would permit.
Why should the beginning of this entry, being on the west side of the creek, have the tendency to extend the eastern boundary of the claim farther to the east than if the corner had been on the eastern margin ? The converse of the reasoning will certainly be found in the general correct.
The space between the N. E. corner of the settlement and the creek is, in conformity to the call for the creek, filled up by an extension of the northern boundary of the settlement, and forms for the pre-emption precisely the same boundary as if the N. E. corner of the settlement had been on the creek.
In the latter instance the sense would have been complete in the connection between the settlement and the creek; and it would only have remained to place the pre-emption agreeably to the other calls. But as there was a space to be supplied by construction between the settlement and the creek, each being called for, and this having been done, the same base was presented for the structure of the claim agreeably to the remaining calls : so that in either case the same foundation would be presented for the operation of the other calls. It is true, in *584 one instance we should have the point of-beginning at* rea,,y designated on the creek, and in the other are obliged by construction to consult the meaning of the locator as to that point. But’ it is equally true we are not commanded to stop there ; and why not, therefore, it may be asked,' pursue the course still further in order to preserve the right angled figure ? Because every inch beyond is by construction controlling an express call of the entry, in drawing over the claim from the west to the east side of the creek. Aiid as construction must yield to positive call, when,the sense is clear and complete, we cannot pursue it in a case like the present, ■without doing violence to the fair import of the entry, both as relates to the settlement and the call to run west.
We are therefore of opinion that the pre-emption should be surveyed just including^'and binding on the creek ; thence west; thence east, binding on the settlement, passing the N. E. córner ; thence south to the eastern margin of the creek, placing the claim as nearly in a square as the boundary with the creek will permit.
We are aware of a departure from the opinion in the case of Black vs. Botts. The state of fact, however, is different; and the only alternative is either to depart therefrom, or from what we believe to be the substantial meaning of the entry as expressed, and the just right of -the.claimant, as well as from other opinions..
The decree of the court below must be. reversed with costs, and the cause remanded, that a decree may be rendered agreeably to this opinion ; and for such other orders and proceedings as may be consistent with equity and law.